The Honorable John C. Coughenour

FILED ___ ENTERED
___ LODGED ___ RECEIVED

MAR 14 2022

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY_____ DEPUTY

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR21-099 JCC |
| Plaintiff, | |
| v. | **PLEA AGREEMENT** |
| ELVIN HUNTER BGORN WILLIAMS, | |
| Defendant. | |

The United States of America, by and through Nicholas W. Brown, United States Attorney for the Western District of Washington, Todd Greenberg, Assistant United States Attorney for said District, D. Andrew Sigler, Trial Attorney, Counterterrorism Section, U.S. Department of Justice, Defendant Elvin Hunter Bgorn Williams, and Defendant's attorneys, Corey Endo and Mo Hamoudi, enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure 11(c).

1. **The Charge**. Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enter a plea of guilty to the following charge contained in the Indictment: *Providing Material Support to a Designated Foreign Terrorist Organization*, in violation of Title 18, United States Code, Section 2339B(a)(1).

Plea Agreement - 1
U.S. v. Williams, CR21-099JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

By entering the plea of guilty, Defendant hereby waives all objections to the form of the charging document. Defendant further understands that before entering any guilty plea, Defendant will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

2. **Elements of the Offense.** The elements of the offense to which Defendant is pleading guilty are as follows:

> First, Defendant knowingly attempted to provide material support and resources, as that term is defined in Title 18, United States Code, Section 2339A(b), including personnel and services, to a foreign terrorist organization, namely the Islamic State of Iraq and al-Sham ("ISIS"), which was designated by the Secretary of State as a foreign terrorist organization pursuant to Section 219 of the Immigration and Nationality Act;
>
> Second, Defendant had knowledge that ISIS was a designated terrorist organization or that it engaged in terrorist activity and terrorism;
>
> Third, Defendant is a citizen of the United States; and
>
> Fourth, Defendant did something that was a substantial step toward committing the crime and that strongly corroborated Defendant's intent to commit the crime.

3. **The Penalties.** Defendant understands that the statutory penalties applicable to the offense to which Defendant is pleading guilty are as follows: A maximum term of imprisonment of twenty (20) years; a fine of up to $250,000; a period of supervision following release from prison of up to life; and a mandatory special assessment of $100 dollars. If a probationary sentence is imposed, the probation period can be for up to five years.

Defendant understands that supervised release is a period of time following imprisonment during which Defendant will be subject to certain restrictive conditions and requirements. Defendant further understands that, if supervised release is imposed and Defendant violates one or more of the conditions or requirements, Defendant could be

Plea Agreement - 2
U.S. v. Williams, CR21-099JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant further understands that the consequences of pleading guilty may include the forfeiture of certain property, either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Statement of Debtor form as requested by the United States Attorney's Office.

4. **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, Defendant knowingly and voluntarily waives the following rights:

    a. The right to plead not guilty and to persist in a plea of not guilty;

    b. The right to a speedy and public trial before a jury of Defendant's peers;

    c. The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for Defendant;

    d. The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

    e. The right to confront and cross-examine witnesses against Defendant at trial;

    f. The right to compel or subpoena witnesses to appear on Defendant's behalf at trial;

Plea Agreement - 3
U.S. v. Williams, CR21-099JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

     g.    The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

     h.    The right to appeal a finding of guilt or any pretrial rulings.

**5.    United States Sentencing Guidelines.** Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offenses; (2) the history and characteristics of Defendant; (3) the need for the sentence to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offenses; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of Defendant; (6) the need to provide Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

     a.    The Court will determine Defendant's Sentencing Guidelines range at the time of sentencing;

     b.    After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

     c.    The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

Plea Agreement - 4
U.S. v. Williams, CR21-099JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

     d.    Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

**6.**    **Ultimate Sentence**. Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

**7.**    **Statement of Facts**. The parties agree on the following facts. Defendant admits Defendant is guilty of the charged offense:

> Defendant Elvin Hunter Bgorn Williams is a citizen of the United States. At the time of Williams' offense conduct, the Islamic State of Iraq and al-Sham ("ISIS") was designated by the Secretary of State as a foreign terrorist organization pursuant to Section 219 of the Immigration and Nationality Act. Williams had knowledge that ISIS was a designated terrorist organization and that it engaged in terrorist activity and terrorism.
>
> On November 20, 2020, Williams posted an online video of himself pledging allegiance to the leader of ISIS. Thereafter, Williams began describing himself as a member of ISIS and told others, including family members, friends, and associates, as well as multiple FBI confidential human sources ("CHSs"), that he wanted to travel overseas, join ISIS, and wage violent jihad on behalf of ISIS.
>
> For example, in early January 2021, Williams told a family member that he was a member of ISIS and was waiting to receive word from ISIS as to when he should travel overseas to fight with the organization. Williams made numerous similar statements via an encrypted messaging application, including on February 15, 2021, when he stated: "I am getting [a] passport to leave this disgusting land. Before I do, my [ISIS application] must be approved and then I shall leave once they are." On the same day, Williams also stated: "I will be martyred."
>
> In February 2021, Williams began communicating over an encrypted messaging application with two FBI CHSs who represented themselves to be ISIS recruiters who would approve and facilitate Williams' travel for jihad on behalf of ISIS. Among other things, Williams told the "recruiters":
>
> - "I want to make *hijrah* and help with the next caliphate."
> - "I have nothing here . . . and I wish to please Allah and attain martyrdom."
> - "I seek martyrdom in the cause of Allah."

Plea Agreement - 5
*U.S. v. Williams*, CR21-099JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- "I want to leave America to help my brothers and fight in the cause of Allah."
- "I want Allah to smile on my death."
- When asked whether he had a "problem with killing," Williams answered: "No I do not. Not in the slightest bit."
- When asked what he thought about "beheading . . . with knife," Williams replied: "I would love to do this. [Blood] does not bother me in the slightest bit. As I said, I am firm with death and have no fear."

Through the purported ISIS recruiters, Williams tendered a putative application to ISIS listing his reason for travel as "jihad." The "recruiters" told Williams that his travel would receive final authorization after he obtained a passport and purchased an airline ticket.

In March 2021, Williams applied for a U.S. passport. He also began working at a job in the Seattle area to save money for his intended travel and pawned his laptop computer to raise additional funds. The purported ISIS recruiters provided Williams with a list of items to acquire prior to his travel, including tactical gear, boots, and other items. Williams discussed his desire to raise money to purchase these items and ultimately did purchase several of the items on the list.

On April 24, 2021, Williams communicated to the purported ISIS recruiters: "I have all my supplies, passport will come [] this month, and I will buy a ticket as soon as you inform me of where we need to go. . . . For what better victory in the way of our lord except death."

Williams discussed his planned trip with another Seattle area associate who agreed to travel with him. Unbeknownst to Williams, this associate recently had become an FBI CHS ("CHS-2"). On April 26, 2021, Williams told CHS-2 that he had prepared a video to send to another person in Kazakhstan to be published online after Williams became a martyr. Williams made the video available to CHS-2. The video is approximately one minute in length and depicts Williams making several statements.

On May 6, 2021, Williams' passport arrived in the mail. Later that day, Williams participated in an online chat with the purported ISIS recruiters. Williams stated: "[I] will have money for plane ticket next Friday, I have all my supplies ready, now I have my passport." As the group chat continued, Williams added, "[E]verything is well, I am just ready to leave [land of the non-believers]. . . . I can hardly wait. I wish to make my lord

Plea Agreement - 6
U.S. v. Williams, CR21-099JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

smile upon me." As the others expressed approval, Williams stated: "I wanted to remind I wish to die in the battlefield. I feel slightly uncomfortable with detonating myself as there is a slight disagreement, but if I am told to blow myself up for my brothers and for the sake of Allah I will." Williams further stated, "I wish to see the *kuffar* as I kill them, I want to strike terror in them and make Allah pleased for doing so."

The "recruiters" told Williams that his application had been approved, and Williams requested to travel to the Sinai desert to fight with ISIS. Three hours later, still on May 6, 2021, Williams informed the "recruiters" that he had just purchased a flight to Cairo International Airport. Williams forwarded his travel itinerary which documented that his flight was scheduled to depart Sea-Tac Airport on May 28, 2021, at 1:35 p.m., flying through Amsterdam and Paris, and ultimately to Cairo.

On May 22, 2021, Williams met with CHS-2. They watched several violent ISIS-related videos that Williams accessed over the internet. While they viewed the videos, Williams stated, "Man, I really want to behead the, they make me executioner." CHS-2 asked, "You want to beheading people? Are you full okay with that? Are you okay with blood?" Williams replied, "Yeah, 100%, man."

On May 23, 2021, Williams participated in an online conversation with the purported ISIS recruiters. Williams stated that he had "been working out again and trying to get prepared for the training camp." Williams reaffirmed, "I am ready." One of the "recruiters" asked Williams: "This is the time some brothers choose to back out. I want to make sure you know that if u decide not to make *hijrah* it is no problem. Need to make sure u are fully committed now." Williams replied: "Back out? Never, why would I back out of attaining *junnah* [eternal paradise]? There is nothing greater than fighting and dying in the cause of Allah."

On May 24, 2021, the purported ISIS recruiters provided Williams with instructions on how to meet up with the supposed ISIS contact at the Cairo airport. The "recruiters" also confirmed that Williams had final approval from ISIS leadership for "hijrah." Williams replied: "[T]hank you so much brothers. You do not understand how happy I am rn [right now]?" The "recruiters" instructed Williams that he should not have any further communications with them prior to his travel unless there was an emergency.

Plea Agreement - 7
*U.S. v. Williams,* CR21-099JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

On May 28, 2021, Williams, accompanied by CHS-2, went to Sea-Tac Airport consistent with his travel plans. Williams checked in for his flight to Cairo and was arrested at approximately 1:00 p.m. after he presented his boarding pass at the gate and attempted to board the flight.

FBI agents advised Williams of his *Miranda* rights. Williams waived those rights and agreed to speak with the agents. During the post-arrest interview, Williams identified himself as a member of the "Islamic State" (ISIS). Among other things, Williams stated that it was his "obligation" to do "hijrah" and to travel to a country that practices Sharia law. When asked what his role was going to be when he arrived, Williams stated that he would be an "executioner" or a "machinegunner." Later during the interview, Williams stated: "My intent was to make hijrah. It doesn't matter what you guys do to me. I get rewarded for it." Williams further stated, "Dude, you either leave – it's hijrah or jihad – or prepare explosives here." Williams explained: "I want to die. We love our deaths more than you love your lives." Williams also said that his only message to the U.S. government was: "Go to hell."

The parties agree that the Court may consider additional facts contained in the Presentence Report (subject to standard objections by the parties) and/or that may be presented by the United States or Defendant at the time of sentencing, and that the factual statement contained herein is not intended to limit the facts that the parties may present to the Court at the time of sentencing.

8. **Sentencing Factors**. The parties agree that the following Sentencing Guidelines provisions apply to this case:

A base offense level of 26, pursuant to USSG § 2M5.3(a);

A 12-level upward adjustment pursuant to USSG § 3A1.4(a), because the offense is a felony that involved, and was intended to promote, a federal crime of terrorism; and

A Criminal History Category of VI, pursuant to USSG § 3A1.4(b).

The parties agree they are free to present arguments regarding the applicability of all other provisions of the United States Sentencing Guidelines. Defendant understands, however, that at the time of sentencing, the Court is free to reject these stipulated

Plea Agreement - 8
U.S. v. Williams, CR21-099JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

9. **Acceptance of Responsibility.** At sentencing, *if* the Court concludes Defendant qualifies for a downward adjustment acceptance for acceptance of responsibility pursuant to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the Court to decrease the total offense level by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying the United States of Defendant's intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

10. **Non-Prosecution of Additional Offenses.** As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Plea Agreement based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation. In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant. Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

11. **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that, if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence. Defendant agrees not to oppose any steps taken by the United States to

Plea Agreement - 9
*U.S. v. Williams*, CR21-099JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement. Defendant also agrees that, if Defendant is in breach of this Plea Agreement, Defendant has waived any objection to the re-institution of any charges that previously were dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of confinement (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Plea Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range. Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the Plea Agreement.

**12. Waiver of Appellate Rights and Rights to Collateral Attacks.** Defendant acknowledges that, by entering the guilty pleas required by this plea agreement, Defendant waives all rights to appeal from Defendant's conviction, and any pretrial rulings of the Court, and any rulings of the Court made prior to entry of the judgment of conviction. Defendant further agrees that, provided the Court imposes a custodial sentence that is within or below the Sentencing Guidelines range as determined by the Court at the time of sentencing, Defendant waives to the full extent of the law:

    a.    Any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the Court, including any fine, restitution order, probation or supervised release conditions, or forfeiture order (if applicable); and

Plea Agreement - 10
U.S. v. Williams, CR21-099JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

    b. Any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation.

  This waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. § 2241, to address the conditions of Defendant's confinement or the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

  If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

  **13.** **Voluntariness of Plea.** Defendant agrees that Defendant has entered into this Plea Agreement freely and voluntarily, and that no threats or promises were made to induce Defendant to enter a plea of guilty other than the promises contained in this Plea Agreement or set forth on the record at the change of plea hearing in this matter.

  **14.** **Statute of Limitations.** In the event this Plea Agreement is not accepted by the Court for any reason, or Defendant breaches any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

//
//
//
//
//
//
//

Plea Agreement - 11
U.S. v. Williams, CR21-099JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

15. **Completeness of Agreement.** The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties, except as may be set forth on the record at the change of plea hearing in this matter. This Agreement binds only the United States Attorney's Office for the Western District of Washington and the Counterterrorism Section of the U.S. Department of Justice. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated this 14th day of March, 2022.

_____
ELVIN HUNTER BGORN WILLIAMS
Defendant

_____
COREY ENDO
Attorney for Defendant

_____
MO HAMOUDI
Attorney for Defendant

_____
TODD GREENBERG
Assistant United States Attorney

_____
D. ANDREW SIGLER
Trial Attorney
Counterterrorism Section
U.S. Department of Justice

Plea Agreement - 12
U.S. v. Williams, CR21-099JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970